The defendant, Carolina Mineral Company, owned and operated a feldspar mine near the falls of Big Crabtree Creek, and also owns a line of railway about eight miles in length, over which road large quantities of ore or feldspar were transported. Certain employees of the corporate defendant owned what is referred to in the evidence as a spat. A spat is a gasoline hand-car about eight feet long and four or five feet wide. There are planks on each side of the car and persons riding, sit on these planks and rest their feet on a rest board over the side of the car. The top of the car is flat like a table. The evidence tended to show that for several years this gasoline flat car had been operated up and down the road on Sundays and various people rode thereon. The road bed had many sharp curves. No price was charged for riding the car. The evidence further tended to show that the plaintiff was employed by the defendant Mineral Company and worked until twelve o'clock Saturday. On Sunday morning the plaintiff went out to the road and found that the hand-car was being operated that day and several persons were riding thereon. The car was driven by the defendant, Frank Murphy. He signaled the car and it stopped and he boarded it. The narrative, as given by the plaintiff, is substantially as follows: "When sitting on this car your feet rested on a little platform or a little board across there. You sit on the car like you were sitting on the side of this table. This car was also used for hauling supplies to the mine. Several times I have seen Frank Murphy operating this car on Sundays. I have seen him operating three or four Sundays. He has been employed by the Carolina Mineral Company three or four years. Frank Murphy was *Page 395 
driving the car on the day I was injured. I got on the car about 200 yards up from highway No. 69. I had ridden on the car on Sundays prior to the time I was injured and on week days also. The road curved at the point where I was injured. The joint stuck out there in the curve of the road and there was a little elevation — not much. Frank Murphy was driving the car at a speed of fifteen or twenty miles an hour. On the day I was injured I think Frank Murphy was drunk. When we reached the curve the motor car gave a quick jerk and I fell off. There was nothing there for me to hold to. It was customary for employees to ride on Sunday if they wanted to. At the time of the quick jerk when the car threw me off it dragged me fifteen or twenty feet. The car ran on forty or fifty feet after I was thrown off. My leg was broken. I don't know who owned the car at the time — whether the Carolina Mineral Company or the employees. I was not starting back to work when I got on the car. I was not working for the Mineral Company at the time and had not worked for them since twelve o'clock the day before. I had drunk all there was in a pint bottle except a couple of drinks. I was not drunk enough not to know what was happening. I was not drunk that day. When I got on the car there was seven or eight or nine others including two girls named Lockie Tolley and Ethel Tolley. I sat down on the right-hand side of the car. I changed from the right side of the car to the left in that little meadow where they stopped to get the horses off the track. On the left side of the spat were the two, Tolley girls. Lockie Tolley was in front on the left side before I changed sides. I got up and sat down beside Lockie Tolley on her left side and in front of her. I had never seen her before in my life nor spoken to her. I was comfortable on the right-hand side and had no reason to go over on the left-hand side. Two or three minutes after I got on the left-hand side I was thrown off. When I sat down by Lockie Tolley I was just talking and laughing and going on with her. Part of the time I was playing with her — pinching her. I was just playing with her. I was sitting right against her and pinched her arm. She did not shove me off the car. She just shoved me in play. It was while I was playing with Lockie Tolley that I got off the car. Nobody else fell off that car at that time except me. I was on the car that day for my own pleasure and convenience, and none of the men on the car were working for the company that day. That was on Sunday."
A brother-in-law of the plaintiff testified that he did not see any girl knock plaintiff off the car, and that at the place where plaintiff was hurt there was a joint in the track out of alignment.
The defendant offered Lockie Tolley as a witness, who testified that the plaintiff first sat down on the right-hand side of the car and then *Page 396 
came over and sat by her and attempted to hug her and take other liberties with her person, and that thereupon she "pushed him off the car." The defendant also offered the testimony of several persons who were riding on the car, to the effect that Lockie Tolley had pushed the plaintiff off the car or that they had heard her warn him about his familiarity.
The following issues were submitted to the jury:
1. "Was the plaintiff injured by the negligence of the defendant, Frank Murphy, as alleged in the complaint?"
2. "Was the plaintiff injured by the negligence of the defendant, Carolina Mineral Company, as alleged in the complaint?"
3. "Did the plaintiff, when he got upon the spat or hand-car on the track of the defendant, Carolina Mineral Company, assume the risk as alleged in the answer of the defendant, Carolina Mineral Company?"
4. "Did the plaintiff contribute to his injury by his own negligence, as alleged in the answer?"
5. "What damages, if any, is the plaintiff entitled to recover?"
The jury answered the first issue "No," the second issue "Yes," and third issue "No," the fourth issue "No," and the fifth issue "$1,500."
From judgment upon the verdict the Mineral Company appealed.
The measure of duty owed by the Mineral Company to the plaintiff must be determined by establishing the status of the plaintiff at the time he fell or was pushed from the car. The plaintiff testified: "I was on the car that day for my own pleasure and convenience, and none of the men on the car were working for the company that day. That was on Sunday." This declaration classifies the plaintiff as a licensee upon the tracks of defendant. The duty that an owner of premises owes to a licensee was thus stated in Peterson v. R. R., 143 N.C. 260, 55 S.E. 618: "A licensee who enters upon premises by permission only, without any enticement, allurement or inducement being held out to him by the owner or occupant, cannot recover damages for injuries caused by obstructions or pitfalls. He goes at his own risk and enjoys the license subject to its concomitant perils." To the same effect is the declaration in Brigman v. Construction Co.,192 N.C. 791: "The general rule is that a trespasser or permissive or bare licensee upon the property of another cannot recover for defects, obstacles or pitfalls upon the premises, unless the injury shall result from wilful or wanton negligence." Quantz v. R. R., 137 N.C. 136, 49 S.E. 79; Jonesv. R. R., 199 N.C. 1, 153 S.E. 637; Gibbs v. R. R., 200 N.C. 49, *Page 397 156 S.E. 138. Directly in point is the declaration of law in Willis v. R.R., 122 N.C. 905, 29 S.E. 941, as follows: "The court properly told the jury that the plaintiff was not a passenger, but a mere licensee riding on the hand-car by permission, and that as such he took all the risks of that mode of travel (such as injury by the hand-car running off the track, and the like). But this did not give the defendant the privilege of killing or maiming him at sight by its gross negligence," etc.
The defendant did not own the hand-car upon which the plaintiff was riding. However, it permitted its tracks to be used by the owners of said car. Even assuming the existence of a prevailing custom that employees were permitted to use the tracks of defendant for operating a hand-car thereon, still there is no evidence that the corporate defendant committed any negligent act tending to increase the hazard to plaintiff while the was engaged in using its tracks for his own purpose. Hence, the principle announced in the Brigman and Jones cases, supra, does not apply. Consequently, the motions for nonsuit should have been granted.
Reversed.